IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHAEL JUSTIN PARKINS                                          PLAINTIFF

V.                        CASE NO. 5:17-CV-05220

DETECTIVE ALISON NGUYEN;
DETECTIVE CHAD POMIETLO; and
DEPUTY ROY BROOKS, JR.
(Benton County Sherriff's Office)                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C.

§ 1983.  Currently before the Court is Defendants' Motion for Summary Judgment.  (Doc.

23).  For the reasons set forth in the following Opinion, the Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff filed his Complaint on October 30, 2017.  He is currently incarcerated in

the Arkansas Department of Corrections, Ester Unit.  Plaintiff alleges several violations

of his constitutional rights by detectives in the Benton County Sheriff's Office ("BCSO")

on March 16, 2017.  (Doc. 1, p. 4-7).  He claims his Fourth Amendment rights were

violated by Defendants when they executed a traffic stop on his vehicle without either

probable cause or reasonable suspicion to do so.  *Id.* at 4.  Plaintiff alleges the BCSO has

a custom or policy of violating Fourth Amendment rights by conducting searches and

seizures without probable cause.  *Id.* at 5, 6.  He further alleges officers are not adequately

trained and records will show a pattern of violations.  *Id.* at 5.

Plaintiff next alleges that Defendants Pomietlo and Brooks used excessive force

against him during his arrest when Defendant Brooks used "a couple of hammer fist to

1

the side of [his] head," which resulted in the "grinding of [his] skull into the asphalt." *Id.*
Plaintiff alleges he was "in no way combative" and instead asked the detectives why they
were hitting him. *Id.* He believes that these Defendants were trained "never to hit
someone in the head or other places that can cause death or specific undue harm." *Id.*
He claims he suffered injuries, including emotional pain and distress, as a result of certain
customs and policies of BCSO. *Id.* at 6.

Lastly, Plaintiff contends that all Defendants violated his rights with their malicious
prosecution of him. *Id.* Plaintiff points out that the prosecuting attorney dropped all but
one of the charges contained in the probable cause affidavit, thus indicating that
Defendants acted with malice against him in by filing the charges in the first place. *Id.*
Plaintiff alleges it is the policy or custom of BCSO to deprive American citizens of their
constitutional rights through illegal actions and contacts. *Id.* at 7.

Plaintiff attached the probable cause affidavit for his state criminal case to his
Complaint, and it provides a description of Plaintiff's stop and arrest. (Doc. 1, pp. 10-12).
In March of 2017, Defendant Nguyen received information from a reliable confidential
informant that drug trafficking, mainly methamphetamine, was taking place at the
Baymont Hotel in Bentonville. Due to this report, Defendants Pomietlo and Brooks were
patrolling the area in two cars on March 16, 2017, at approximately 2:00 a.m. They
noticed a vehicle driving slowly around the hotel and parking at the back of the hotel with
the headlights left on. As Brooks approached the vehicle, the headlights were turned off,
but the occupants remained in the vehicle. Brooks aimed a flashlight into the vehicle and
noted two passengers. *Id.* at 10. He activated his emergency lights and ordered the
female driver to show her hands, as both occupants were stiff and rigid in their seats.

Then Brooks ordered the passenger of the vehicle, the Plaintiff, to show his hands, as well. Plaintiff only raised his right arm. Brooks reported that this "made the hair on the back of his neck stand up." *Id.* at 11.

Next, Brooks gave loud verbal commands for the occupants of the vehicle to raise their hands so he could see them. The female driver complied; Plaintiff did not. Brooks turned his attention to Plaintiff and gave "louder more aggressive orders for him to show both of his hands." *Id.* Brooks heard a loud thud, as though something heavy had been dropped in the vehicle, and Plaintiff then jumped out of the vehicle and attempted to flee the scene. He ignored Brooks's orders to stop. Brooks radioed for backup. While running, Brooks saw Plaintiff concealing something in front of him with his hands, which Brooks believed could be a weapon of some kind.

Defendant Pomietlo stopped Plaintiff's flight by wrapping his arms around his waist and taking him to the ground. Defendant Brooks then took control of Plaintiff's left wrist. Plaintiff refused to obey orders to place his free hand behind his back and "continued to reach for his waist with his right hand and curl his hand under his body." *Id.* Brooks then executed "a couple hammer fists" to the side of Plaintiff's head and was able to gain compliance. *Id.* Plaintiff's head began to bleed "slightly." *Id.* Plaintiff was then taken to the emergency room at Northwest Medical and medically cleared. *Id.*

The item Plaintiff had been concealing at his waist was a small purse containing what was later determined to be 241.1 grams of methamphetamine. A small pink and black handgun was located near the driver's side of the vehicle. It was believed that Plaintiff had dropped the weapon to the floor of the vehicle and the female driver had thrown it out the vehicle window. *Id.* at 12.

Plaintiff was charged with trafficking a Controlled Substance (Class Y felony), Possession of a Controlled Substance with the Purpose to Deliver (Class A felony), Simultaneous Possession of Drugs and Firearms (Class Y felony), Possession of a Firearm by Certain Persons (Class B felony), Resisting Arrest (Class B misdemeanor), and Fleeing (Class C misdemeanor). *Id.*

Plaintiff now proceeds against Defendants in their official and personal capacities as to all his claims. *Id.* at 4-6. He seeks compensatory and punitive damages, as well as freedom from jail and prison and a mental health evaluation. *Id.* at 7.

The sentencing order provided along with Defendants' Motion for Summary Judgment indicates that Plaintiff was assigned a public defender for the charges associated with the facts set forth above. Plaintiff eventually pleaded guilty to Trafficking a Controlled Substance and Possession of a Firearm by Certain Persons on August 7, 2018. (Doc. 25-2 at 33-34). Medical records from Northwest Medical Center show that Plaintiff was treated for a closed head injury without loss of consciousness and head lacerations. (Doc. 25-4 at 2). His examination and head CT were normal. (Doc. 25-4 at 6). His patient care orders directed him to clean the wounds and apply Neosporin. (Doc. 25-4 at 7).

Plaintiff was deposed by Defendants on February 28, 2018. (Doc. 25-9). During the deposition, Plaintiff testified that Defendant Brooks told him and the female driver to raise their hands "[q]uite a few times" while they were in the vehicle. *Id.* at 26. Plaintiff admitted that he had raised one hand while "getting the drugs" with the other. *Id.* at 25. Plaintiff soon jumped out of the vehicle and started running from police while carrying the methamphetamine. He was only able to run for about ten or fifteen feet before he was

tackled by an officer. *Id.* at 26. After he was tackled, he "got into the fetal position; got into a ball" while keeping his hands on the bag at his waist. *Id.* at 27. The officers told him to give them his hands. Plaintiff understood they wanted to handcuff him, but Plaintiff did not give them his hands and instead kept them tucked close to his waist "on the bag of drugs." *Id.* at 27-28. He admitted he "wasn't complying" with officers' orders. *Id.* at 27.

He claims that at some point, one of the officers started punching him in the face and grinding his head in the asphalt. He could not remember how many times he was hit or "really a lot of stuff right around that time." *Id.* at 29. He also admitted that his memory was not clear about what exactly happened that night because he had recently ingested methamphetamine and drunk a half-pint of Everclear—which is pure grain alcohol—"right before" his arrest. *Id.* at 29-30. Among other facts, he could not remember if he continued to resist after he was struck but said it was possible that he continued to roll around on the pavement. *Id.* at 57.

After Plaintiff was subdued, he was taken to the hospital for treatment for an abrasion on his head. He was given only adhesive bandages for the wound, not stitches. *Id.* at 31-32. Other than his skin being "scraped off," Plaintiff admits he suffered no other physical effects from the arrest. *Id.* at 37. After charges were eventually filed against him, Plaintiff was assigned a public defender, and he was represented by this attorney at the time he entered his plea of guilty to certain charges. *Id.* at 19.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

5

of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants argue that summary judgment should be granted in their favor because: (1) Plaintiff's claims that his arrest was made without probable cause and amounted to malicious prosecution are barred by the *Heck* doctrine because he pled guilty to the charges that resulted from his arrest; (2) the force used against Plaintiff during his arrest was objectively reasonable; (3) Defendants are entitled to qualified immunity; and, (4) there is no basis for official capacity/county liability.

Plaintiff argues the *Heck* doctrine, arising from the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), does not apply to bar his claims because his guilty plea and sentencing were illegal in the first place, and he has now filed a habeas

6

petition. Plaintiff does not, however, allege that his habeas petition has been favorably ruled upon. With respect to the excessive force claim, Plaintiff argues that the officers failed to use "pressure point compliance or any other training" before using the "hammer fist," and this clearly violated their training. (Doc. 28, p. 1). Plaintiff argues the policy for officers should be "to never strike suspects in head or face unless it is a life[-]threatening situation." *Id.* His arrest was not a life-threatening situation for police, he believes, because he "was on the ground not in any position to flee with officers holding [his] legs and waist." *Id.* Plaintiff argues qualified immunity is not appropriate here because he was physically harmed by BCSO officers when he was arrested.[1] *Id.* at 2. Finally, Plaintiff contends Benton County is "known for" "deliberate indifference cruel and unusual punishment and excessive force and violence . . . as seen in Solomon v. Petray 795 F.3d 777 USC." *Id.* According to Plaintiff, he has personally witnessed several other incidents of violence committed by arresting officers. *Id.*

## A. Arrest and Prosecution Claims

Plaintiff's § 1983 claims concerning the validity of his arrest and subsequent prosecution are barred by the *Heck* doctrine. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim seeking damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question

---

[1] Plaintiff also states he was harmed during a physical altercation with BCSO officers during his incarceration in the Benton County Detention Center. This claim was not raised in his Complaint, and the deadline to amend his Complaint is long past. This claim will therefore not be considered in this opinion.

by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. The Court noted that if a successful claim would not demonstrate the invalidity of an outstanding criminal judgment, it should be allowed to proceed.

There is no dispute that Plaintiff was represented by a public defender and pleaded guilty to two charges resulting from his arrest on March 16, 2017, *i.e.*, Trafficking a Controlled Substance and Possession of Firearms by Certain Persons. (Doc. 25-2 at 60-61). Plaintiff alleges that he has filed a *habeas* petition concerning his conviction, but he has not alleged that his conviction was reversed, expunged, declared invalid, or called into question.[2] Thus, any finding by this Court that his arrest or prosecution was unlawful would directly affect the validity of his state court conviction. His claims regarding the validity of his arrest and subsequent prosecution are, therefore, barred by the *Heck* doctrine, and Defendants are entitled to dismissal of these claims as a matter of law. *See United States v. Saean*, 583 F.3d 1059, 1061 n.3 (8th Cir. 2009) (any guilty plea, including an *Alford* plea, results in a conviction); *Carmi v. City of St. Ann, Missouri*, 22 F. App'x 674, 675 (8th Cir. 2001) (guilty plea extinguished arrest and search claims); *Havens v. Johnson*, 783 F.3d 776, 784 (10th Cir. 2015) ("[T]he *Heck* doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained.").

### B. Excessive Force Claim

Plaintiff alleges Defendants Brooks and/or Pomietlo used excessive force against him when delivering multiple hammer-strikes to his head during his arrest. Where an

---

[2] Plaintiff submitted copies of his state *habeas* petition on April 27, 2018. (Doc. 22). Plaintiff testified this petition was denied. (Doc. 25-9 at 21). Research by the Court in this District and the Eastern District of Arkansas on August 15, 2018, revealed no federal *habeas* petitions filed by Plaintiff.

excessive force claim arises in the context of an arrest, it is most properly characterized as one invoking the protections of the Fourth Amendment. *See Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). In evaluating an excessive force claim under the Fourth Amendment, a court must consider whether the force was objectively reasonable under the circumstances, "rely[ing] on the perspective of a reasonable officer present at the scene rather than the '20/20 vision of hindsight.'" *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). The application of this standard requires careful attention to the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. While "de minimis *injury* does not foreclose a claim of excessive force under the Fourth Amendment," the extent of the injuries sustained by the suspect during the arrest may be evaluated to determine the reasonableness of the force used. *Peterson v. Kopp*, 754 F.3d 594, 601 (8th Cir. 2014) (emphasis in original); *Mann v. Yarnell*, 497 F.3d 822, 826 (8th Cir. 2007).

Plaintiff contends there are two factual disputes regarding his excessive force claim. First, he claims he was not combative. Second, he claims that the officer or officers who used the hammer-fist maneuver knew that he did not have a weapon on his person. (Doc. 28, p. 1). The undisputed facts in the case show that Plaintiff refused to comply with officer instructions while seated in his vehicle. He exited the vehicle and began running from police. Once police caught up to him and tackled him, he was holding something in his hands. After he was taken to the ground, he refused to give officers both

his hands and continued to clutch something at his waist that was later revealed to be a purse. Nothing in the summary judgment record indicates that Brooks or Pomietlo knew what Plaintiff was concealing in his hand, as he curled around it in the fetal position. Although *Plaintiff* must have known that it was only a purse, and that the purse contained only methamphetamine, there is no evidence that *the police* on the scene knew what the purse contained.

"Law enforcement officers may use physical force to subdue an arrestee when he fails to lie still during handcuffing." *Carpenter*, 686 F.3d at 649-50 (when arrestee lay on his hands and refused orders to offer them for handcuffing, use of taser was reasonable); *Mann*, 497 F.3d 826-27) (use of K-9 officer and multiple brachial stun strikes reasonable when arrestee, who was reported to be high on methamphetamine and threatened to shoot police, twisted on his side rather than lying flat on his stomach to be handcuffed and then rose to his feet unhandcuffed). Based on Plaintiff's deposition testimony, he failed to submit to handcuffing after officers tackled him to the ground because he failed to give officers both of his hands. Defendant Brooks then administered hammer-strikes to Plaintiff's head to gain compliance. It was reasonable for Brooks and the other officers to believe that Plaintiff was concealing a weapon either in his hands or in the purse he was holding. Although this belief ultimately proved incorrect, "[a]n act taken based on a mistaken misperception or belief, if objectively reasonable, does not violate the Fourth Amendment." *Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012) (use of deadly force objectively reasonable based on mistaken belief that suspect was armed with a gun).

Given these circumstances, it was objectively reasonable for Defendants to believe Plaintiff posed an immediate threat to their safety. The use of force in the form of hammer-strikes to the head was therefore objectively reasonable. *See Brown v. City of Golden Valley*, 574 F.3d 491, 497 (8th Cir. 2009) ("A threat to an officer's safety can justify the use of force in cases involving [even] relatively minor crimes and suspects who are not actively resisting arrest or attempting to flee."). Further, the fact that Plaintiff suffered only *de minimis* injuries in the form of abrasions to his head and knees indicates that the amount of force police exerted was also *de minimis* in nature. For all these reasons, Defendants are entitled to dismissal of the excessive force claim as a matter of law.

### C. Failure to Train, Official Capacity, and Qualified Immunity

Since Plaintiff has failed to establish that he suffered any violations of his constitutional rights as a matter of law, it is unnecessary for the Court to consider his failure to train and official capacity claims and Defendants' qualified immunity defense.

### IV. CONCLUSION

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 23) is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**. Judgment will be filed contemporaneously with this Order.

**IT IS SO ORDERED** on this ___12th___ day of October 2018.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE